Your Honors, in 2013 the iPhone 5 did a couple of things very well with regard to messaging. Number one, it captured the attention of users really well in terms of receiving messages and alerts and notifications that messages were incoming. The iPhone 5 would alert a user regardless of the setting of an incoming message either through sounds or haptics, what Apple calls haptics, vibrations, and it also kept a user's attention through the delivery of content, the delivery of a message. It conditioned users to respond to incoming messages regardless of the setting. And there are multiple scientific studies that demonstrate this over and over and over again, especially with respect to younger users. Now, in this case, in 2013, there was a collision involving a user of an iPhone, Ashley Kubiak, and a family who was waiting to make a left-hand turn into their neighborhood on a busy high-speed highway in Texas. The iPhone, in this case, which was an iPhone 5, conditioned, we alleged, Ashley Kubiak to respond to and read an incoming message. And that message, it's undisputed, when they looked at the Verizon phone, there had been a message that came in at that time? Well, so, Your Honor, you hit a very good point because there is no dispute. We didn't get beyond the 12B6 stage. Right, but the existing record didn't speak to that issue. Well, the existing record on a dismissal consists of the complaint. And so, Your Honor, I can't answer that question because we don't have a fully developed fact record like we would in a... So, just legally, what, I mean, you know, this would be an innovative theory. Would you agree there's no court... Absolutely, and this is... Okay, but when you're candid to say absolutely, but doesn't that end your case right there? We can't innovate. No, and... We have to be able to point to Texas law. Absolutely, and we're not asking the court to innovate, expand liability, create new law in any way, shape, or form. When we're talking about innovation, what we're talking about is a new product used in a new way in a dangerous situation, and we're asking the court to apply 60 years of Texas law in the area of products, liability, and negligence, nothing more. Now, if you want to talk about innovation, what Apple is essentially asking you to do, and what the district court did in its ruling, is it gives Apple immunity from products liability for this specific conduct that it knew about, had intentionally designed to occur regardless of the setting, and it created an invention that would address this situation four years before this accident. Four years. What is your closest case if there's 60 years of case law supporting your theory of neurochemical compulsion being the distinction between other stimuli that distract people, cheeseburgers, and whatever the district court said? What is your best case where liability attaches under Texas law on this neurochemical compulsion theory? Well, so the compulsion theory is, you know, that's based on scientific facts. So the allegation is we're alleging scientific fact, we're alleging that the iPhone was designed to do this, and there's scientific evidence to support that. So as a fact matter, that's what we are alleging. Now, is there a case where, in Texas, where a court finds either through summary judgment or a jury has found that a iPhone user is compelled to automatically respond to an incoming message? No, because this case is the first of its kind for this particular product, because it's a new product. But when you do tell us there's 60 years of law supporting your theory that this is a substantial factor, this isn't a condition, what's your best case? So in order to answer that question, you have to tease apart what the district court did in this case. And what we believe the district court did was it imposed its views on duty in saying, okay, Ashley Kubiak, her duty to drive her vehicle trumped the duty of Apple. I thought the district court just said there is no cause in fact. That's what the court said. But if you drill down into what the court, the meaning of what the court did, that's what the court did. Because it disregarded foreseeability and it found Ashley Kubiak to be the intervening cause. And so when I talk about 60 years of products liability law, I'm talking about the foreseeability element with respect to that. But under Texas law, foreseeability doesn't equate to substantial factor. It is one of the things that you have to consider in the cause and fact analysis, especially in a products liability case. So to directly answer your question about the case, there are various cases. But the best one, just start with the best one. Well, since we're talking about safety mechanism, the failure to install a safety mechanism, I think the best case is Ford v. Kamek. Where you have the failure of Ford to install a seat belt in a third row bench in the back of a Bronco II, when it knew that there would be three people potentially sitting in the back row of that Ford. When they didn't, because of the negligence of a third party, which in this case you could say would be an intervening cause, just like in our case, the negligence of another party led to a collision and there was no seat belt for that passenger to be fastened to in the back during the collision. Well, in that case, the passenger has no option. In this case, the driver had an option. And that was to disregard that and drive her car. In the Ford case, there was a total absence of the safety device. So the passengers had no decision-making ability. Well, the passenger could have never gotten in the vehicle in the first place, which is similar to what Apple, I'm sure, will say during their argument that Ashley Kubiak could just simply turn the phone off. That's true, but what Apple knows is that people don't do that. These phones are embedded in our lives. There are studies that show that we spend more time in our relationship with our phone than we do with any other human being in our sphere. That's not in the record, but that study is out there, and again, we would like to develop. There's no state law. You would have found it. You're both excellent counsel. There's no state law anywhere yet supporting this theory, right? California recently disfavored or declined. And, Your Honor, that's, again, my case in California. And the California court looked to the magistrate's decision in this case and disregarded California law and applied the magistrate's thought process in its ruling. Now, that decision is up on appeal to the Ninth Circuit State Court of Appeals in California. And so, to answer your question, Your Honor, in Ford v. Kamek, there was a choice. The passenger could have elected not to get into the vehicle, knowing that there was not a third row seatbelt in the third row. The other case, Your Honor, in terms of what supports our theory is Dover v. Perez, which is a 1979 case out of Texas. And in that case, it involved the use, the failure to install properly a burner unit with a proper venting mechanism that led to carbon monoxide poisoning. In that case, the defendant pointed to the negligence of the personnel that installed the vent in the unit, and the plaintiff pointed to the manufacturer, saying the manufacturer failed to utilize a proper safety mechanism and failed to warn of the problem of applying an improper vent and improper burner. In that case, the court, which underlies a lot of the principles that we're talking about here, stated two very important principles. Number one, you can't point to the negligence of a third party in a products liability case and expect that it bar liability for the product manufacturer's wrongful conduct. That's number one. And number two, again, we're talking about the failure of mechanically preventing for foreseeable injury. The court in that case looked at the foreseeability element in the substantial factor analysis, because it's a products liability case, and said that in this instance, in the products liability case, foreseeability is certainly a factor with respect to substantial factor. When you qualify innovation to mean technological innovation but not the law, why wouldn't the appropriate state law that we would defer to be DRAM shop liability, where it was up to the Texas Supreme Court in Poole to say, okay, now we're doing this, and then immediately the legislature said, we're going to codify this. It wouldn't be a federal court saying, we're going to predict, because technology has become innovative, that this is the direction that the substantial factor test would extend to. Why wouldn't we defer to the fact there is no case really anywhere in the country, not just not in Texas, applying liability to cell phones because they distract. So, Your Honor, that's another great question. And dealing with DRAM shop, you're dealing with a Texas statute. Right. But it was first the Supreme Court. In El Chico versus Poole. Yeah. What the Texas legislature did with that case was they looked at the liability that could be imposed, and they said, okay, we're going to codify DRAM shop liability. And what they did, and of course, we can get into legislative intent, but I think what they were doing at that time was limiting that liability by statute to establishments that served alcohol for profit and carved out social hosts. Yeah. Under the common law, after Poole, you could sue a social host and an establishment that served alcohol for service. Your simple answer is you didn't put it in the brief because it's not relevant. It's not relevant. Correct. That is correct. Again, we're dealing with common law principles here. You picked the two cases that I did think were the most difficult, Ford and Dover. The nurse razor case is not as helpful, right? That's much more immediate and causal. As opposed to a condition. And again, Your Honors, if you saw the material that we updated our briefs with this week, there was a case, a very recent case called Critical Path out of the 14th District Court of Appeals. And what Critical Path does, it talks about what does furnishing a condition mean? The district court in this case believed that furnishing a condition equates to furnishing a product. That they're synonymous. But they're not. Because in the substantial factor analysis, according to Critical Path, and other cases that we've cited in the brief, to determine whether or not a cause is too remote to be a substantial factor, you look at two things. Number one, you look at whether or not the wrongful conduct that you're saying caused the harm or the injury, if it ceased. If it had come to pass, came and went, and there's no connection between the harmful conduct and the injury. Now, of course, in this case, we've alleged concurrent cause. Meaning that Apple and Ashley Kubiak acted together to cause the collision in this case. The second thing that Critical Path stands for, and again, this is drawn from similar cases such as Bell, Union Pump, Lear-Siegler, IHS versus Cedars. It draws from those cases, and it says the second thing that you look at is what conduct, what is, who is being placed where. If the conduct, which is wrongful, acts upon the plaintiff, and places the plaintiff in a place and time where an independent third party then injures the plaintiff, then that cause is said to be too remote. Because there's no nexus between the wrongful conduct of the defendant, which you're saying caused the harm, and the plaintiff's injury. There's no nexus. But with respect to this case, what we're saying is that Apple's wrongful conduct in conditioning users to respond and text and drive, and knowing that their phones did, knowing how to fix it, and they didn't. There's a causal nexus between Apple and Kubiak, the defendant, where you have innocent bystanders that have nothing to do with what's going on between Kubiak and Apple. They're just simply waiting to make a left-hand turn. Now, what Critical Path tells us is that in that situation, you can't say that that conduct was too remote because Apple's not merely furnishing a condition that places the plaintiff in a particular time and location when an entirely different independent agency from Apple causes harm. In our case... Helpful for us to rely on our flock decision. It seemed to synthesize rather complicated Texas law to where would a reasonable person think that responsibility lurks? And that defines the nexus. I have to say, if we're thinking about the common sense notion of responsibility lurking, this Kubiak, or four years earlier, the construction of the phone, that test wouldn't favor you, in my mind. Yours is a powerful, more philosophical notion of, but for what Apple did, the phone wouldn't have been used. So is flock and that reasonable person test acceptable to you? Not in this instance, and I'll tell you why. Because when you're talking about common sense and common knowledge, again, if you look at the Dover case, common knowledge and common sense is not a bar to liability, especially in products liability cases, okay? That's number one. And number two, common sense and common knowledge is based on decades of experience. Our human experience with these devices in this context is extremely limited in the scientific principles behind studying this phenomenon, or in their infancy. And the district court completely disregarded that, and said, I'm going to apply my common sense, even though it's out of sorts with the scientific community, to this situation, and impose my beliefs, as opposed to following the allegations in the complaint. All right. Thank you, sir. We reserve rebuttal. Mr. Boutros. Good morning, Your Honors. Theodore Boutros for Apple. As counsel has, I think, agreed, no case in United States jurisprudential history has ever adopted the theory that plaintiffs are asking this court to adopt. Twenty-two judges around the country have rejected this sort of theory about distracted driving based on an individual using a device in a vehicle, including the California courts, including an appellate California court. And counsel is correct that the trial judge in one of the California courts that we're involved in as well, relied on Magistrate Judge Mitchell's opinion, which we believe absolutely is consistent with California law, and fully consistent with Texas law. And Judge Higginson, I think you were alluding to the principle that this court has relied on many, many times, that a federal court sitting in diversity is not to front-run the state courts in creating law, innovating, expanding state law. And this court has said that as an earring matter, in the Huck's case, for example, that this court articulated these principles, the court is to look to see what the Texas courts would do. And I think the examples of the cases that counsel gave show why there's just no case that's even close to the fact pattern here. The Ford case, I'll just start with that, and then I'll give you my broader argument. The Ford case is a garden variety product liability case. The vehicle posed the very risk of harm that ultimately occurred, that there would be an accident. It was the vehicle and the lack of a safety feature, the seat belt, which is a well-known safety feature, that caused the injury. So it... But his point is the drivers caused the accident there as much as Ms. Kubiak did here. The drivers must have caused the accident. The latent defect is there's no seat belt. And it's a classic crash within this case where there can be two substantial factor causes, but they both have to be a substantial factor. It's not at all a distant attenuated factor to say... Well, also in the Ford case, I don't recall the facts, but it could have been that the driver of the Ford was not negligent at all. Correct. But a third party was. And yet it's the machine, the car, that lacks the safety, not a remote instrument. Exactly, Judge Wiener. That's just basic product liability law, that the vehicle, if a vehicle lacks a safety feature that would protect someone in a crash, stop them from being injured, that's not attenuated. And courts don't hold that. With respect to the heater case, the Dover case, same thing. It was the manufacturer of the heater itself, not some third party that manufactured another product that distracted the person when they were installing the heater. It was the actual heater, and it was the manufacturer being found to have been liable and to have been a substantial factor by not giving a warning about installation and by creating a heater that could emit carbon monoxide. So just not even close. And, Your Honor, on the, just to back up. Yes. Again, their logic is, what about Flock? The lighter didn't cause the fire. The person caused the fire, the child. Your Honor, I think Flock does really support our position here, and I think counsel seem to agree, that it's that reasonable, practical sense of where we're going to put responsibility. And this is another reason why this court, I think, has refrained from altering a state's law on these issues because, as the Union Pump case from the Texas Supreme Court said, causation, in fact, really is a policy consideration. Where do we draw this line? It's a practical matter, not in the philosophic sense. It's the popular sense. And so in Flock, there, the purpose of the lighter was to create fire, which is inherently dangerous. And so, again, just like the Ford case, just like the Dover case that Plaintiff relied on, it was the actual product and the manufacturer of that product that was creating a product that itself could cause the injury that ultimately occurred. And so that's much closer. And here, we're, no pun intended, light years away from that situation. And here, the district judge and the magistrate judge, I think, just very clearly articulated Texas law. And again, Judge Higginson, I think you were referring to this fundamental principle that one of the most recent cases is the IHS Cedars case, where the Cedars treatment case, where the Texas Supreme Court reiterated for probably the fifth, sixth, seventh time that where a cause, in fact, is not established where the defendant does no more than furnish a condition which makes the injuries possible. But their claim is, had they been able to get past the dismissal, they have scientific evidence that will show it wasn't a condition, it was a compulsion that Apple knew. It's the equivalent of a sort of a piercing noise that it would distract somebody. Let me address that, Aaron, because we are following, and the district, both the district judge and magistrate judge followed to a T, Hick, Ball, and Twomley in the correct standard on a motion to dismiss. They did not create the facts. They accepted as true the compulsion theory and everything else. But on that theory, again, plaintiffs admitted below, and the district judge cited this in a footnote, that they're not arguing that Ms. Kubiak was deprived of all volition and free will, and in their words, turned into a zombie. Their claim is that she was attracted to the phone, and they claim that scientific evidence shows that there's a compulsion, yes. It's like a slot machine if not a cheeseburger. Well, and there are, as the district judge found, tobacco, food, some people can't get along without their coffee in the morning, so they get it in a restaurant that literally says you can drive through to drink your hot coffee in your car, which can be distracting, but the law is never imposed. Did they have a 28-J case where the passenger interrupts the driver? Yes, it was actually the, I think it was a casino owner's employee who was arguing with the driver, and so it wasn't a phone that was just sitting there. It was a person who you couldn't hit the off button and turn off. So again, just standing there, arguing, distracting, I mean, just classic bread and butter tort law. And here- I'll ask you an unfair question, but since you're litigating this around the country, you probably know, I thought I saw that there was a New Jersey case that did find liability for the person who phones knowing the driver is driving, that there could attach liabilities. Do you have any recollection of that? I don't, Your Honor, that does not ring a bell with me, but I think that's kind of where it does kind of go to the point that once you go down this road, the person that phones, the app developer who creates something that's interesting to the driver, that they would like, the person who makes the radio, a map maker, all the things that could distract someone. When I brought up jam shop liability, would you say that it would be appropriate if a legislature does see this technology as becoming a difficulty, then we're getting a lot of legislation in the realm of cell phones and how to interrupt it? Absolutely, Your Honor, it is a policy issue. And let me be clear, Apple views this as a serious issue that it wants to make products that allow its customers to make smart choices, to be safe. It has developed CarPlay, which allows it to get text verbally in a car. It has a do not disturb while driving feature that allows you to program your phone so it won't alert you. In Texas, and this really goes to your point, Judge, that since the judgment here below an active statute, HB 62, that the governor signed into law, and I can give you the exact site of the actual statute, it's Texas Transportation Code, Section 545, actually, let me give it a bit, it's Section 521.161 and then 545.4251. And it carefully balances the benefits of having a phone and a device in your car where you can, for emergencies, for mapping, the GPS, there's hands-free mechanisms, but it bars the kind of conduct that Ms. Kubiak was found to engaged in, in a criminally negligent way in a criminal trial, texting or reading text while driving. So legislatures around the country are working through these issues, which are important. I want to make that very clear. We agree on that point. And so here, counsel made a number of statements about the law. It's simply incorrect that foreseeability is part of the cause and fact inquiry. The cases, if you look at IHS Cedars, the case, the new case that counsel cited that just now, that they had in their 28 jailer, all the cases make clear that cause and fact is a substantial factor and but for a causation. In a negligence claim, there's an additional element that has to be foreseeable. In a strict liability case, foreseeability isn't even an issue. So here the question is, you know, many things can be a but for a cause. And the restatement, Section 431 that the Texas Supreme Court relies on says, you know, almost anything, so many things can be a but for a cause. It's just an event that occurs. It's not that philosophic sense. It's the practical sense. So here, the question is, did the phone create the condition that allowed the injuries to occur? And if it's only that as a matter of law, as the district judge found, the magistrate judge found, there's no cause in fact. And they're exactly right. And Judge Higginson, you asked another question. I'm glad you did. Because the complaint makes a lot of statements that are under equal and formally just implausible. They're not, maybe they're possible, but they're not plausible. And one, you put your finger on it. In our excerpts of record, the appellee's excerpts of record, page RE3, it's the police report. And remember, in this case, their entire theory, it's completely speculative, is that a message came in, a notification, a text message came in, and Ms. Kubiak was compelled to read it, and that that's, that caused her to get an ax. But the police report, the police officer that filled it out, said that he was given access to the actual text messages and none were sent near the time of the crash. This is in paragraph 15 of the police report. And he determines she may have been reading an old text message or gone to a social media site. So he determined that, and this is the document that the plaintiff submitted as part of their First Amendment, First Amendment complaint. So this is what they're relying on. And even that doesn't support the grounding of what their compulsion theory and their expert declaration in the Second Amendment complaint is predicated on. The operative language in the complaint that they used as to Apple, is it in the passive tense that the active tense was her checking the phone, but Apple, it was made possible? Or do you remember? In the complaint, they, in the complaint, they, I think, to give them all the benefits and inferences, their theory is that the phone, the message came in, the notification, they emphasized the notification, that that was the triggering mechanism for their purported compulsion theory. And therefore, that's why these things work together. But even in that, they're at best, that's a possibility. The other- What is the best Texas case that distinguishes between a condition and a concurrent cause? Is there one that just spells it out pretty nicely? I think that the IHS Cedars case, to me, just really clearly lays it out, and it's 2016. And that series of cases, really, then there's the two product liability case, the Lear-Siegler case, and then the- Union Pump. Union Pump. And again, if you think of those, those were much closer in terms of the causation analysis. Union Pump, for example, the pump started on fire that the manufacturer had made, and then the cleanup and the putting out of the fire created a slippery condition, and someone slipped and was injured. And that's just much more- because it's much closer in time and in context where the product itself created a condition. And yet, the Texas Supreme Court said, that's not cause and fact, that's just creating the condition. And so I think that the Texas cases are just very clear that this falls into that creating a condition. And if we think about it, there are all sorts- I mentioned this already, but other conditions that can distract one when you're driving. And everyone knows, I mean, it's sort of driving 101, you're supposed to keep your eyes on the road, and they're looking at a map, more traditional things, looking at a radio. And this torque theory that the plaintiffs have articulated would dramatically expand Texas law, would be uncharted waters, would break new ground in U.S. jurisprudence. And in a diversity case, this court has said time and again, that's not the role of the court. And so for those reasons, we think the court should affirm. The other issue I wanted to address that counsel, I think, alluded to is this concurrent cause issue. And again, the cases from Texas are just very clear. Concurrent cause analysis doesn't get triggered unless you have two causes in fact. So you have to find that there are two causes that are substantial factors in causing the accident. And so you don't get to the concurrent cause analysis unless you find here that Apple's design and manufacturer of the iPhone was a cause in fact and substantial factor. And for all the reasons we've argued and that I've argued today, it is not. It was in the words of the Texas Supreme Court, a condition that made it possible for things to happen and the injuries to occur, but not a cause in fact. I just want to address a couple. The other point, and again, I want to go to the theory because they do make a lot of allegations about the scientific theories in the brief. And we don't agree with them. But as I said, we do believe there's an issue that needs to be addressed as a policy matter. But again, their theory is that it's the notification from the phone. But they don't claim that Ms. Kubiak, for example, didn't know that she could turn off the phone or turn off her notifications or take other actions before getting in the car. And there is always a way to not get notifications from your phone. It's just to turn it off and not use it. And they don't allege in the complaint with respect to Ms. Kubiak that she was so overtaken by the phone itself that she couldn't make those reasonable person moves to avoid driving with criminal negligence. So they're just really basic pleading flaws in the complaint, plus the flaws under Texas law. And I'll just briefly address the patent. That goes really to the foreseeability argument, which the court does not need to reach because there was no substantial factor causation here. But again, that patent was over a decade ago. It was not something that was turned into consumer-ready technology. And it recognized there was an issue. But in terms of it being a causing fact here that there wasn't this lockout feature, for all we know, under their own theory, Ms. Kubiak may have said, well, I don't want a phone. It has this lockout feature. I'm not going to buy that phone. So it's just extraordinarily speculative under Iqbal and Duomly, just as a pleading matter. And so for all these reasons, we believe the court should affirm the district court and the magistrate judge did a straightforward analysis under Texas law,  And then with respect to the motion to amend, the district court effectively allowed plaintiffs to amend and analyze the second amended complaint and found that while it elaborated a bit on the compulsion grounds, it still didn't, as a matter of law, meet Texas law. And that's subject to an abusive discretion standard. So we respectfully request that the court affirm. All right. Thank you very much. Mr. Love, you have a rebuttal. Thank you, Your Honor. One of the cases that we submitted with our 28-J letter was Choctaw v. Sewell. In that case, the Texas court in that case recognized the distraction of the driver. Counsel discussed that. What counsel spoke to with respect to that case is not reconcilable with Apple's position in this case. And that is a driver can never be distracted. The duty of the driver trumps any other distraction that may be caused. In that case, you had a passenger that was affirmatively interfering with the driver's attention, the bus driver, his attention to the roadway. In this case, we're saying that Apple's iPhone, because it conditions users to respond and automatically respond to incoming messages and read those messages, that the iPhone affirmatively interfered with Kubiak's driver. Now, there's no distinction in these cases where the driver has absolutely no control over the passenger and total control over the iPhone. Well, Your Honor, again, the driver can choose to ignore the passenger because it would be company policy to ignore the passenger and focus his attention on the roadway. The driver could do that. And again, that's what the district court did in this case. He disregarded our fact allegations. He imposed his belief imported from outside the complaint that the driver has a choice, that there's a deliberate thought process where the driver says, there's an incoming message. I think I'm going to ignore the roadway and read what the message says. The scientific evidence that we put forth in our second amendment complaint, which we were not allowed to amend, says that there is not a deliberate thought process. It is an automatic response. And if that message comes in and a driver knows about it, especially younger drivers, Ms. Kubiak was a younger driver, they're going to read that message and they're going to either, they're going to see it, read it, and either respond to it or not. But the response to the message where you're actually texting, that gets into the area of deliberate thought, but not the looking down and reading the message, just like a passenger interfering with the bus driver. Now, the underlying district court's opinion in this case is what I think the anchor of the district court's opinion, and that is all distractions are created equal, and they're not. They're not all created equal. And the court equated the iPhone to a cheeseburger, to tobacco, to alcohol, and no serious scientist studying this epidemic would in any way agree with that statement. NHTSA does not agree with that statement because the average time it would take to take a bite of a cheeseburger, maybe a minute and a half, I mean a second, half a second, the average time it takes to read a message on an iPhone, according to studies, is over 20 seconds. And if you're going 70 miles an hour down the highway reading a message for 20 seconds, that is absolute risk of harm. Well, the driver has the option of not eating the cheeseburger. The cheeseburger doesn't make any noise. The driver also has the option on entering the car to turn off the phone. Yes, Your Honor. So aren't those intervening choices? And again, if it's an intervening act, even in cause and fact, you look to foreseeability to see if that intervening act was or was not foreseeable. And according to this patent, Apple knew, most importantly, that users didn't stop doing it, wouldn't stop themselves from doing it, and number two, that law enforcement would not stop the practice. They expressly stated that in the patent. So regardless of the user and the user's choice and laws on the books to prevent it, Apple knew almost four years before this collision those two things. And we're saying any reasonable person viewing all the facts would not dismiss this case. All right. Thank you, counsel. Interesting case, to say the least. Thank you for the briefing and argument of both counsel. This will complete this case. Before we bring up the third case.